UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LAWRENCE J. ALLEN, JR.,

                                 Plaintiff,

v.                                              No. 13-CV-1518
                                                       (GTS/CFH)
COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

---

**APPEARANCES:**                                        **OF COUNSEL:**

OFFICE OF PETER M. MARGOLIUS
Attorney for Plaintiff
7 Howard Street
Catskill, New York 12414

HON. RICHARD S. HARTUNIAN            MONIKA K. CRAWFORD, ESQ.
United States Attorney for the              Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff Lawrence Allen, Jr. ("Allen") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Allen moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 10, 12. For the reasons which follow, it is

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

recommended that the Commissioner's decision be affirmed.

## I. Background

### A. Facts

Born on December 20, 1963, Allen was forty-six years old on the alleged disability onset date. T. 19, 27.[2] Allen graduated from high school. T. 30. Allen's previous work experience was as a truck driver hauling cars. T. 30. Allen alleges disability from back and groin pain. T. 132.

### B. Procedural History

On April 13, 2011, Allen filed an application for disability insurance benefits claiming an alleged onset date of June 8, 2010. T. 101-104. That application was denied on August 10, 2011. T. 54-58. Allen requested a hearing before an administrative law judge ("ALJ") and a hearing was held before ALJ Carl E. Stephan on June 27, 2012. T. 66, 24-44. In a decision dated October 23, 2012, the ALJ held that Allen was not entitled to disability benefits. T. 9-20. Allen filed a timely request for review, and on November 1, 2013, the Appeals Council denied Allen's request, thus making the ALJ's findings the final decision of the Commissioner. T. 1-8. This action followed.

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 8.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Berry, 675 F.2d at 467. Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.

## B. Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is

---

[3] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec 'y of Health and Human Servs., 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation omitted).

4

> currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Stephan's Findings

Allen, represented by a non-attorney representative, testified at the hearing held on June 27, 2012. T. 24-44 (transcript from the administrative hearing). Using the five-step disability sequential evaluation, the ALJ found that Allen (1) had not engaged in substantial gainful activity since June 8, 2010, the alleged onset date; (2) had the following severe medically determinable impairments: degenerative disc disease

5

affecting the lumbar spine, myofascial pain syndrom, and groin pain; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintains "the residual functional capacity [("RFC")] to perform the full range of light work . . . retain[ing] the ability to stand and walk for six hours per day, sit for six hours per day, lift 20 pounds occasionally and 10 pounds frequently," and thus, (5) given his age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy. Therefore, a determination of not disabled was made.

### D. Allen's Contentions

Allen contends that the ALJ erred in (1) failing to consider the effects of Allen's hip impairment, permanent loss of use of his right hand, and cervical impairment on his ability to work and (2) concluding that substantial evidence in the record supported a finding that Allen retained sufficient residual functional capacity (RFC) to perform work.

### 1. Severity

Allen contends that the ALJ failed to assess properly the severity of his conditions in conjunction with one another. The Commissioner contends that the ALJ properly evaluated the severity of Allen's impairments. The ALJ found that Allen suffered from severe impairments due to his degenerative disc disease in his lumbar spine, myofascial pain syndrome, and groin pain. T. 14. However, his other physical

6

disorders, including his hip and cervical impairments and loss of use of his right hand, did not impose significant limitations on Allen's functioning. T. 15-19.

As discussed above, step two of the sequential evaluation process requires a determination whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. See subsection IV(A) supra; 20 C.F.R. § 404.1521(a) (2003). Where a claimant alleges multiple impairments, the court will consider "the combined effect of all [] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Id. § 404.1523. An impairment, or combination thereof, is not severe if it does not impinge on one's "abilities and aptitudes necessary to do most jobs." Id. § 404.1521. Basic work activities which are relevant for evaluating the severity of a physical impairment include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. . . ." Id. § 404.1521(b)(1).

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." DeChirico, 134 F.3d at 1180; see also 20 C.F.R. § 404.1520(d) (2003); Id. at pt. 404, subpt. P. App. 1 (2003)(listing of per se disabling ailments). Additionally, the regulations state that "if an individual has an impairment that is 'equal to' a listed impairment," that individual is disabled regardless of his or her age, education, or work experience. DeChirico, 134 F.3d at 1180 (quoting 20 C.F.R. § 404.1520(d) (2003)).

### i. Hip

Allen relies upon a comment from Dr. Pearlstein's medical notes on February 8,

7

2012 which states that he "think[s Allen's] groin pain may be related to the hip, but can't explain the pain on palpation of th[]e r[igh]t spermatic cord." T. 339. Dr. Pearlstein indicated that an x-ray was necessary and that a further referral may be needed. Id. The x-ray ultimately showed "mod[erate] arthritic changes," and an injection was recommended, though ultimately declined by Allen. T. 339; see also T. 314 (noting that Allen "absolutely refused . . . injections," due to a phobia of needles); T. 32 (testifying that Allen has yet to take any pain medication).

However, the x-rays which were performed bilaterally on Allen's hips and pelvis on November 26, 2010 were normal. T. 222, 272. A MRI of Allen's pelvis also illustrated unremarkable results, finding no masses or regions of abnormal enhancement and only incidental degenerative changes of the hip. T. 334. The existence of degenerative change is not per se evidence of a severely disabling impairment. See Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) ("The presence of an impairment [or disease] is thus not in and of itself disabling within the meaning of the Act."). In this case, the objective medical evidence fails to support anything more than unremarkable findings. Additionally, the body of medical evidence provides substantial evidence that this ailment was not severe.

In a neurosurgical evaluation by Dr. Edward Scheid, Jr. on February 4, 2011, Dr. Scheid noted that Allen had bilateral negative straight leg raises, that his muscle strength was 5/5, and he ambulated steadily and without difficulty or complaint. T. 243. While the neurosurgical follow-up showed a "positive Patrick's [test] on the right [side] producing pain in the groin and hip," Dr. Scheid continued to note full motor strength in the lower extremities and concluded that "his symptoms do not really correlate with the

[objective] findings." T. 240-41.

These physical findings were consistent with those of consultative examiner Dr. Jose Corvalan from July 27, 2011. T. 322-25. Dr. Corvalan noted that Allen was "in no acute distress," with a normal gait and the ability to fully squat and independently change, rise, and get on and off the changing table. T. 323. While the range of motion in his hips were limited, such limitations were attributed to low back pain, and were not severe enough to result in anything more than mild restrictions. T. 324-25. Dr. Corvalan's conclusion was further bolstered by Allen's subjective reporting during which he told Dr. Corvalan that he could independently cook, clean, shop, do laundry, and attend to his daily hygiene and dressing. T. 323. Allen also stated that he spent his time watching television and fishing. Id. Such findings fail to support the conclusion of the presence of a severe impairment, as it appears that any such pain at best caused minimal limitations to Allen's ability to perform work-related functions.

Further, to the extent that the hip pain was the cause for Allen's groin pain, as opined by Dr. Pearlstein, such pain was deemed severe by the ALJ. T. 14. Accordingly, the limitations associated with the alleged groin pain were considered and discussed at length in the ALJ's opinion. T. 14-18. For the reasons discussed infra, substantial evidence supports the conclusion that the ALJ's RFC determination was appropriate. Therefore, the decision of the Commissioner should be affirmed.

### ii. Right Hand

Allen also contends that the ALJ failed to consider the "scheduled loss of use [of] 35% . . . of [his] right hand for mobility defects and decreased grip strength." T. 265.

"The burden is upon [Allen] to show that he suffers from a severe impairment that renders him disabled." Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984) (citations omitted). With respect to claims of a disabling hand ailment, Allen has failed in his burden as the record is devoid of information necessary to establish severity. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

    First, Allen fails to proffers any problems with his non-dominant hand in either his application for disability or testimony. T. 132 (application indicating disabling conditions as bulging discs in his back and a tear in his groin), T. 31-34 (outlining disabling conditions as back, shoulder and groin pain with additional treatment for a thyroid condition). Second, the consultative exam with Dr. Corvalan found that Allen had intact finger and hand dexterity with full grip strength in both hands. T. 323. Third, Allen was able to return to his previous job as a car hauler after the scheduled use of loss occurred. T. 268 (indicating that Allen returned to work on April 4, 2008). There is no indication in the record that this condition worsened after Allen resumed working or otherwise deteriorated over time. Accordingly, it may not now be classified as disabling. See Snell v. Apfel, 177 F.3d 128, 135-36 (2d Cir. 1999) (holding that a condition which existed prior to the alleged onset date and did not prohibit the claimant from working or deteriorate from the time claimant was working, cannot later serve as the basis for disability). Lastly, disability determinations for Worker's Compensation are made pursuant to a different standard, focusing on the ability to do prior work as opposed to any substantial gainful activity. See Gray v. Chater, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995) ("Workers' compensation determinations are directed to the worker's prior employment and measure the ability to perform that employment rather than using

the definition of disability in the Social Security Act."); Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) ("the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits . . . Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.") (citations omitted). Thus, the decision of the Commissioner should be affirmed.

### iii. Cervical Impairment

Allen also contends that the ALJ should have considered the effect of cervical impairments on his ability to do work as a 2007 x-ray indicated degenerative changes in his cervical spine. T. 254. However, much like the alleged hand impairment, Allen has also failed to proffer any evidence establishing the existence of a severe cervical impairment on or subsequent to his alleged disability onset date. Conversely, the medical records indicate that the cervical pain and issues which Allen was suffering from had resolved by 2008. In treatment notes on March 17, 2008, Dr. Sirico noted that Allen retained full range of motion in his cervical spine with some discomfort. T. 266. Dr. Sirico indicated total temporary disability from work. Id. However, a few weeks later, after attending physical therapy, Allen indicated that he "fe[lt] much better. The . . . range of motion in [his] neck [wa]s much improved [and he] . . . want[ed] to return to work." T. 268. As previously discussed, Allen successfully returned to work. Much like Allen's hand, there is no indication in the record that this condition worsened after Allen resumed working or otherwise deteriorated over time. Accordingly, it may not now be classified as disabling. See Snell, 177 F.3d at 135-36. In fact, a subsequent

radiological study in 2008 indicated that there were only mild degenerative changes further diminishing any such contentions that the condition was severe. T. 283 (indicating the a CT of the cervical spine on March 11, 2008 showed "only mild D[egenerative] J[oint] D[isease]," and examination yielded "[e]xcellent R[ange] O[f] M[otion] to [the cervical] spine."). Accordingly, the decision of the Commissioner should be affirmed.

### iv. Harmless Error

Moreover, it was clear that the ALJ considered the affects of all of Allen's afflictions, both severe and non-severe, in determining his RFC. T. 12-20. Even if any one or combination of the above listed ailments were deemed severe, of which the undersigned contends for the reasons discussed above they are not, it is of no consequence. The Second Circuit has held that where an ALJ identified some, but arguably not all, of the severe impairments at step two, and continued to "proceed[] through the sequential evaluation process . . . consider[ing] the 'combination of impairments' and the combined effect of 'all symptoms' in making his [or her] determination," the ALJ's decision would not warrant remanding. Stanton v. Astrue, 370 Fed. Appx. 231, 233 n.1 (2d Cir. Mar. 24, 2010) (citing 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's . . . impairments are of a sufficient medical severity . . . [to] be the basis of eligibility . . . the Commissioner . . . shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")). If anything, that mistake would be considered harmless error. Especially in light of the findings infra that the ALJ's

12

RFC determination was supported by substantial evidence.

### 2. RFC

The ALJ determined that Allen retained the RFC "to perform a full range of light work activity . . . [including] the ability to stand and walk for six hours per day, sit for six hours per day, lift 20 pounds occasionally and 10 pounds frequently." T. 16. In reaching this assessment, the ALJ discussed the notes and opinions of Drs. Kuo, Scheid, Corvalan, and Goddard extensively. Allen contends that further limitations on his abilities should have been imposed and that, essentially, the ALJ's RFC determination was not supported by substantial evidence.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in Step 5 of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." Pourpre v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

> Each finding as to the plaintiff's functional abilities must be
> supported by substantial evidence because conclusory
> statements regarding plaintiff's capacities are not sufficient .
> . . Only after the ALJ has described the plaintiff's capabilities
> on a function-by-function basis supported by substantial
> evidence may RFC then be expressed in terms of the
> exertional levels of work, sedentary, light, medium, heavy,
> and very heavy.

DiVetro v. Comm'r of Soc. Sec., No. 05-CV-830 (GLS/DEP), 2008 WL 3930032, at *2 (N.D.N.Y. Aug. 21, 2008) (internal quotation marks and citations omitted).

The thrust of Allen's argument is that his low back impairment should have been granted more significant limitations than those afforded by the ALJ. Allen relies on a MRI report which finds several areas of mild disc desiccation, bulging, and encroachment. T. 251. While Allen contends that more severe limitations should be imposed, he fails to indicate what those limitations are or why specifically they are necessary. As determined and explained by the ALJ in his opinion, any additional limitations would be inappropriate given the medical record.

As a whole, the diagnostic testing consistently showed relatively benign results which supports the ALJ's conclusion that Allen could perform light work. Even in the MRI study relied upon by Allen, the conclusions were mild degenerative changes. As explained by the subsequent neurosurgical evaluation by Dr. Kuo, the MRI did demonstrate degenerative changes but also showed "[cerebrospinal fluid] surrounding the nerve roots as they exit," which indicated that his back pain was not a result of nerve compression or narrowing but instead secondary to musculoskeletal pain. T. 198. Dr. Kuo recommended conservative therapy, namely "physical therapy for core strengthening as well as stretching . . . ." Id. Dr. Kuo ultimately concluded that this was

not a spinal issue and did not recommend spinal surgery.  T. 199.

A CT scan of Allen's abdomen and pelvis was completed on September 15, 2010. T. 256.  There was no evidence of any hernias.  Id.  A MRI of the abdomen and groin was completed on December 7, 2010 and was also overwhelmingly unremarkable showing no evidence of muscle tears or masses.  T. 312, 334.  A subsequent MRI on February 4, 2011 confirmed the previous results explained by Dr. Kuo, showing mild degenerative changes.  T. 248.  An ultrasound of his pelvis and groin on April 26, 2011 also demonstrated unremarkable findings.  T. 263.

A second neurosurgical consultation in 2011 by Dr. Scheid generated similarly benign conclusions.  T. 242-44.  Dr. Scheid noted that Allen had good muscle bulk and tone and that his strength was 5/5.  T. 243.  He also concluded that Allen's "symptoms do not really correlate with the MRI findings," so he requested a EMG study.  T. 241. That study was negative, demonstrating no evidence of nerve dysfunction.  T. 246. Such findings are consistent with the mild limitations set for Allen.

The last set of medical evidence upon which the ALJ relied was from Dr. Goddard, who provided a RFC statement after seeing Allen in August, September, and October of 2012.  T. 351-66.  Dr. Goddard's observations were identical to those of Dr. Scheid, concluding that Allen's allegations of pain were "disproportionate to [his] functional loss."  T. 365.  Dr. Goddard also noted that Allen was not an appropriate surgical candidate.  T. 364.  Dr. Goddard's assessment included much more stringent restrictions than that of consultative examiner Dr. Corvalan; however, Dr. Goddard noted that despite Allen's complaints, his "gait is symmetric [and] fluid . . . [and] he was able to accomplish all movements without assistance [and] without compensatory

strateg[ies]." T. 355. Dr. Goddard opined that despite Allen's "mild limitations in r[ange] o[f] m[ovement], he functions better when distracted than when formally tested[; thus Dr. Goddard was] unable to determine how much of this difference is dramatization of real limitations v[ersu]s malingering." Id. In his treatment notes, Dr. Goddard again emphasized that Allen's "[s]ymptoms seem worse than objective findings would suggest." T. 359. Dr. Goddard also stated that it was unreasonable for Allen to expect improvement in his physical condition without taking any pain medication. Id.

While not relied upon by the ALJ, it is worth noting that Allen's testimony and subjective reports in the medical records also mitigate against a finding of more severe limitations. In the medical record, Allen reports aggravation of his symptoms after "walk[ing] the hills for exercise [for three weeks] (T. 310); "reach[ing] upward [and] pull[ing] the hide off a deer" (T. 310); and shoveling snow (T. 313). During Allen's testimony he stated that he was receiving unemployment benefits. T. 28-29. The ALJ had a discussion with Allen about the fact, in receiving such benefits, Allen had indicated that he was able and willing to work which is the polar opposite representation as those applying for disability, where claimants argue that they are no longer capable of performing any job related activities. T. 29.

The ALJ ultimately gave the greatest weight to Dr. Corvalan who determined that Allen had a mildly limited ability to engage in prolonged "standing, . . . sitting, [and] walking . . . [as well as] bending over, pulling, [and] pushing . . . any heavy weight." T. 325. The ALJ found these observations consistent with Drs. Kuo and Scheid, who noted relatively unremarkable radiological tests, recommended conservative treatment, and commented on the fact that Allen's symptoms did not correlate with the objective

16

medical evidence. The ALJ also found this opinion consistent with Dr. Goddard's as even though Dr. Goddard included more stringent limitations, he stated that his conclusions were flawed due to Allen's perceived malingering. Accordingly, any such stringent limitations were unreliable. This sentiment is further supported by the overwhelming conclusion by the majority of treating physicians that Allen's symptoms seemed far worse than the objective medical evidence would indicate and support. Additionally, these limitations are consistent with Allen's retained ability to successfully complete his activities of daily living and continue to engage in a wide range of activities including walking hills, hunting, and shoveling snow. Lastly, these limitations are not contraindicated because, despite Allen's persistent complaints of disabling pain, he has refused to take any pain medication for the duration of his treatment. See Dahlgren v. Barnhart, No. 04C50077, 2005 WL 66078, at *16 (N.D.Ill. Jan. 7, 2005) (citing Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir.1988)) ("While failure of a claimant to seek medical treatment is not a defense to a claim for disability benefits, the failure to seek medical attention and low dosage use of pain medication does cast doubt upon the seriousness of a claimant's impairments."). The stated reason why is because Allen does not want to take the medication. This reasoning, in conjunction with the potential malingering and overwhelmingly unremarkable diagnostic studies, casts significant doubt the severity of pain being alleged by Allen. Therefore, for these reasons, the Commissioner's RFC decision is supported by substantial evidence and should be affirmed.

### 3. Use of the Grids

The ALJ then conducted his Step Five analysis. The ALJ may apply the Grids or consult a vocational expert ("VE"). See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). "For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled." Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996). However, "where the claimant's work capacity is significantly diminished beyond that caused by his [or her] exertional impairment, the application of the grids is inappropriate," as the Grids do not take into account nonexertional impairments. Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986) (citations omitted). In this case, the ALJ's conclusion that Allen could perform the full range of light work was properly supported by substantial evidence as outlined supra. The ALJ then considered Allen's age, education, and past work history, and properly found that Medical Vocational Rule 202.21 directed a finding of not disabled. 20 C.F.R. pt. 404, subpt. P, App. 1. Therefore, the Commissioner's decision on this ground should be affirmed.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Allen's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED** and the Commissioner's decision finding disability be **AFFIRMED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Date: August 12, 2014
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge